LAW OFFICE OF

# LAURIANO GUZMAN, JR., P.C.
ABOGADO

2565 Frisby Avenue
Bronx, New York 10461

(718) 892-8200
Fax (718) 892-8203
Email: guzmanesq@aol.com

April 16, 2021

*Via Email: Seybert_chambers@nyed.uscourts.gov*
The Honorable Joanna Seybert
United States District Judge
100 Federal Plaza, Courtroom 1030
Central Islip, NY 11722

         RE: <u>USA v. Juan Taveras</u>
            **Docket No: 2:19 CR 00265-JS-AKT**

Dear Judge Seybert:

  Mr. Juan Taveras (hereinafter "Mr. Taveras") is scheduled for sentencing before this Court on May 5, 2021. Please accept this correspondence on behalf of Mr. Taveras for the Court's consideration in lieu of a formal memorandum. The Presentence Investigation Report prepared in this matter assessed Mr. Taveras a Total Offense Level of 27, providing for a Guidelines sentencing recommendation of 120-125 months. Respectfully, we submit that a sentence not exceeding the mandatory minimum is sufficient, but not greater than necessary, and we seek home detention or a similar alternative to incarceration considering Mr. Taveras' disability and increasingly failing health.

**I. The Section 3553(a) Factors Support Imposition of a 120 Month Sentence**

  Section 3553(a) requires a sentencing court to consider additional factors when determining its sentence. These additional factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range established by the Sentencing Guidelines, any pertinent policy statement from the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need to provide

restitution to any victims. Taking into consideration all the circumstances unique to Mr. Taveras, the mandatory minimum sentence of 120 months is more than sufficient. However, those same factors lend themselves to the imposition of sentence that incorporates an alternative to incarceration given Mr. Taveras' physical ailments.

**1. The nature and circumstances of the offense.**

We adopt the factual portion of Presentence Investigation Report. The two-count indictment alleges that a confidential informant provided the Drug Enforcement Agency with information that Mr. Taveras was involved in drug trafficking activities. During surveillance, DEA agents observed Mr. Taveras in a Home Depot parking lot speaking on a cell phone.[1] Thirty minutes later, Mr. Taveras entered a vehicle that was subsequently stopped by law enforcement. A search of the vehicle recovered a quantity of cocaine and heroin attributable to Mr. Taveras.[2] Mr. Taveras was arrested on April 18, 2019 and pled guilty before Your Honor on October 16, 2020.[3] He remains incarcerated.

We are not unmindful of the seriousness of the offense Mr. Taveras has been convicted of. Notwithstanding, consideration of all the circumstances of the offense supports imposition of the minimum sentence and does not preclude Your Honor from fashioning a sentence that includes an alternative to incarceration. Foremost, the offense was non-violent; there are no identifiable victims of this crime. Mr. Taveras was not armed; he neither used nor threatened the use of violence towards anyone and he posed no threat to the law enforcement agents that apprehended him.

---

[1] PSR at ¶3.
[2] PSR at Id.
[3] PSR at ¶1.

## 2. The history and characteristics of Mr. Taveras

Juan Ramon Taveras will appear before this Court just shy of his 59th birthday.[4] A disabled Dominican national subject to deportation, he struggles with drug addiction and deteriorating mental and physical health.[5] The father of seven children[6] and a "sleuth of grandchildren,"[7] Mr. Taveras is described as family oriented and a great father.[8] This is in stark contrast to the example that was set for him by a physically abusive, alcoholic father in the Dominican Republic. Mr. Taveras recalled in lurid detail how his inebriated father would hit him and his siblings with belts, lock them in their rooms for hours, and force them to kneel on sharp cooking utensils.[9] The family would often go hungry because of their father's alcoholism and, ultimately led to their mother fleeing with the children to the United States to escape the abuse.[10]

Life in the United States would not be without its own challenges. Mr. Taveras withdrew from high school in the tenth grade so that he could take up employment to assist with the family finances. Later, he would lose his father suddenly to a pulmonary embolism and his mother, recently, to diabetic complications. Mr. Taveras' first wife, with whom he shares four children, was rendered completely disabled by a mental health disorder and their oldest son would suffer the same fate.[11] While struggling to make ends meet, Mr. Taveras' personal health would begin to steadily decline in 2005 when he suffered successive heart attacks that rendered him unable to work.[12] Currently, Mr. Taveras is plagued by diabetes and attendant complications, which include

---

[4] PSR at ¶27.
[5] PSR at ¶¶31, 40-43.
[6] PSR at ¶¶32,34,36.
[7] Letter of Support from Juliza Taveras at 1.
[8] Id.; PSR at ¶¶33, 35
[9] PSR at ¶29.
[10] PSR at ¶29.
[11] PSR at ¶32.
[12] PSR at ¶40.

poor circulation, vision distortions and numbness.[13] Until recently, he was deprived of proper medical care and was hospitalized in order to assure that his medications were properly prescribed. Adding to his heart issues and diabetes, Mr. Taveras suffers from hypertension, thyroid abnormalities, dizziness, and tinnitus – a pervasive, maddening ringing in his ears.[14] More recently, he was diagnosed with COVID-19.

In addition to his physical ailments, Mr. Taveras battles bouts of depression and self-medicated with cocaine on a near daily basis.[15] Without question, his drug addiction contributed to the poor choices that will cause him to appear before the Court. Those choices, even prior to the imposition of sentence, have had devasting and irreversible effects on his wife, children, and grandchildren.

Perhaps the greatest tragedy occasioned by Mr. Taveras' incarceration is the damage caused to his 8-year-old son of the same name. The child's mother reports that he is acting out due to the absence of his father and she is suffering now that she has lost the financial support of Mr. Taveras.[16] Mr. Taveras has not been able to see the child since his incarceration because the family has told him that his father is "away working."[17]

Taking into consideration the humanity in Mr. Taveras and all of his contributions to his devoted family, we respectfully request a sentence not exceeding the mandatory minimum be imposed. Further, we ask that the Court grant leniency in the form of an alternative to incarceration.

---

[13] PSR at ¶41.
[14] PSR at ¶41.
[15] PSR at ¶46.
[16] PSR at ¶36-37.
[17] PSR at ¶36.

### 3. The Seriousness of the Offense, Respect for the Law, and Just Punishment for the Offense

A Guidelines sentence not exceeding the mandatory minimum is sufficient to reflect the seriousness of the offense of which Mr. Taveras has been convicted, adequately promotes respect for the law, and provides just punishment. In fact, a sentence of an overly lengthy incarceration may undercut respect for the law.[18]

### 4. Adequate Deterrence to Future Criminal Conduct

Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment.[19] "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms.[20] We respectfully contend that Mr. Taveras' health struggles while incarcerated, the separation from his family, and his ultimate deportation, all serve as an adequate deterrent to any future criminal deterrent.

### 5. Public Safety and Potential Recidivism

The Sentencing Commission has published studies concluding that the Guidelines overstate the risk of recidivism and that, on the contrary, "there is no correlation between recidivism and [a] guidelines' offense level." [21] "The guidelines' offense level is not intended or

---

[18] Gall v United States, 552 U.S. 38, 54 (2007) (" 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing' ") (quoting the District Court).

[19] See Andrew von Hirsch, et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

[20] Gary Kleck, et al., The Missing Link in General Deterrence Theory, 43 Criminology 623 (2005).

[21] See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines at 15 (May 2004) available at http://www.ussc.gov/publicat/Recidivism_General.pdf ("Measuring Recidivism"); Recidivism and the First

designed to predict recidivism."[22] The Sentencing Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense levels. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines offense level is not intended or designed to predict recidivism."[23] We respectfully submit that a sentence of 120 months, incorporating an alternative to incarceration, is more than adequate to ensure public safety and prevent Mr. Taveras from recidivating.

### 6. Additional Factors

#### A. Mr. Taveras' Eventual Deportation

First, as a deportable felon, Mr. Taveras will unnecessarily be placed in a more restrictive status of confinement and will be denied access to the Bureau of Prison's many rehabilitative programs, including early release and community confinement programs that are otherwise available to the general population. Two provisions of the Sentencing Reform Act indicate that alienage consequences should be considered at sentencing. First, § 3553 obliges the sentencing judge to consider the "history and characteristics of the defendant." Alienage and the consequences of deportation fit squarely into this provision. Despite being viewed as civil in nature, deportation is the harshest part of criminal sanction and should be taken into consideration among the defendant's other relevant characteristics.

#### B. The Cost of Incarcerating Mr. Taveras

Elderly prisoners and those with complicated or age-related medical conditions are expensive to care for and house. Estimates are that older prisoners cost between three to nine times

---

Offender (May 2004) available at http://ussc.gov/publicat/Recidivism_General.pdf ("First Offender"); A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score (Jan. 4 2005) available at http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf.
[22] See Measuring Recidivism, at 15.
[23] See Id.

more per prisoner to incarcerate than younger ones.[24] In 2013, the average cost of incarcerating a person in a BOP medical center was $58,956 per year compared to $27,549 for inmates in the general population.[25] It is appropriate for the Court to consider this cost as compared to other more economical options when formulating its sentence.[26] As alluded to in the PSR, Mr. Taveras' physical condition warrants the Court's consideration of an alternative to incarceration, which may include home detention. Respectfully, a long period of incarceration will cause great harm to Mr. Taveras and be of little, if any, benefit to the community given the enormous financial cost of incarcerating him.

## CONCLUSION

Mr. Taveras requests compassion and leniency in this matter. A sentence not exceeding the mandatory minimum is sufficient to meet the sentencing goals of providing just punishment, adequate deterrence, public protection and rehabilitation opportunity. Further, given the physical condition of Mr. Taveras, we ask the Court to consider an alternative to incarceration to lessen the burden on the Bureau of Prisons and decrease any unwarranted suffering by Mr. Taveras.

WHEREFORE, Mr. Taveras respectfully requests that this Honorable Court impose a sentence of time served, which is sufficient, but not greater than necessary, to comply with the

---

[24] Cyrus Ahalt et al., Paying the Price: The Pressing Need for Quality, Cost, and Outcomes Data to Improve Correctional Heath Care for Older Prisoners, 61 J. of the Am. Geriatrics Society 2013, 2014 (2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3984258/.

[25] See U.S. Dep't Justice, Memorandum: Top Management and Performance Challenges Facing the Department of Justice (Nov. 2014), available at: https://oig.justice.gov/challenges/2014.htm.

[26] See U.S.S.C. §§ 5H1.1, 5H1.3, and 5H1.4; 18 U.S.C. § 3553(a)

statutory directives set forth in 18 U.S.C. § 3553 (a). Mr. Taveras further requests that this Court waive all fines and penalties in this matter.

Respectfully submitted,

___/s/_____

Lauriano Guzman, Jr., Esq.
Attorney for Mr. Juan Taveras

CC via email, ECF:
    AUSA Burton T. Ryan